CALVIN BOYNTON, Administrator, *versus* WILLIAM
DALRYMPLE.

The condition of a bond executed in 1807, by the defendant, as principal, with two
sureties, after reciting that the defendant had, in 1803, by warranty deeds, con-
veyed certain real estate to the obligee, and that certain persons had or pretended
to have a claim to such real estate or portions thereof, proceeded as follows: "Now
if the defendant shall well and truly keep and perform all the covenants in the
deeds aforesaid by him to be performed, and shall quiet and extinguish the lawful
claims and rights of all persons whatsoever in and to the same lands, and shall
procure a good and sufficient release of such claims and rights to the obligee, so
that the obligee, his heirs and assigns, shall not be, at any time hereafter, molested
or disturbed in the possession of said lands, or be sued, ejected, or turned out of
the possession thereof, then this obligation to be void." It was *held*, that the bond
was a contract of guarantee against disturbance and interruption, and that the mere
existence of an outstanding right to such real estate in a third person, did not con-
stitute a breach of the bond, so long as there was no disturbance either of the pos-
session or title of the obligee by suit or claim.

In an action upon such bond, the defendant pleaded performance, and the plaintiff
replied setting out by way of breach an outstanding right to the estate in a third
person which existed when the deeds were executed; to this replication the plain-
tiff demurred. It was *held*, that the demurrer was not an admission of a defect in
the obligee's title for which he was entitled to a remedy upon the bond, but was
merely equivalent to a declaration, that although there was such an outstanding
right, yet that the defendant was not called upon to go into a trial of that question
in such action.

DEBT on bond brought by the plaintiff as administrator of
Ephraim Nutting the obligee.

The bond was dated May 13, 1807, and was executed by
the defendant as principal, with two sureties. The condition,
after reciting that the defendant, by his warranty deeds, dated
February 12, 1803, had conveyed to the intestate, in fee,
certain parcels of real estate in Groton, and that certain per-
sons had or pretended to have a claim and title to such real
estate or portions thereof, proceeded as follows : "Now if
the said William Dalrymple shall well and truly keep and
perform all the covenants in the deeds aforesaid by him to be
performed, and shall quiet and extinguish the lawful claims and
rights of all persons whatsoever in and to the same lands, and
shall procure a good and sufficient release of such claims and
rights to him, the said Nutting, so that he, the said Nutting,
his heirs and assigns, shall not be at any time hereafter mo-

Boynton
v.
Dalrymple.

lested or disturbed in the possession of said lands, or be sued, ejected or turned out of the possession thereof, then this obligation to be void," &c.

The defendant pleaded general performance. The plaintiff replied, setting out by way of breach, that on January 10, 1790, James Dalrymple died seised in fee of the premises, and that one undivided eighth part thereof descended to and vested in Timothy Woods and Elizabeth his wife, in her right, she being the daughter of James Dalrymple; that the defendant, on February 12, 1803, entered into the premises and disseised Woods of his undivided eighth part thereof; and that Woods and wife continued to have a good title to such undivided eighth part. To this replication, there was a general demurrer.

Oct. 18th.

*Keyes*, for the defendant, to the point, that unless the obligee informed the defendants of the claim, and demanded of him to procure a release, the defendant had time during his life to extinguish such claim, cited *Bothy's case*, 6 Coke, 31; Co. Litt. 208 *b*; 3 Wood's Convey. 535; *Nose* v. *Bacon*, Cro. Eliz. 798; Com. Dig. *Condition*, *G* 4; *Executors of Grenelife* v. *W———*, 1 Dyer, 42 *a*.

*Farley*, for the plaintiff. The bond was intended as collateral security to the covenants in the deed; and if the covenants that the land was free from incumbrances and that the grantor had a right to convey, were broken at the time of the execution of the bond, as they in fact were, there was also a breach of the bond at the same time. *Prescott* v. *Trueman*, 4 Mass. R. 627; *Marston* v. *Hobbs*, 2 Mass. R. 433. But if there was no breach of the bond then, the condition has since been broken, the claim of Woods and wife not having been extinguished within *a reasonable time* by the defendant. 3 Wentworth's Pl. 233; 2 Chitty on Pl. 111, 117; Co. Litt. 208 *b*; *Favor* v. *Philbrick*, 5 N. Hampsh. R. 361; *Hodsden* v. *Harridge*, 2 Saund. 62 *a*, note 4. The defendant being the grantor, knew more of the title than the grantee, and was therefore bound to see that all lawful claims were extinguished by releases, whether any adverse title was set up or not, and whether so required by the obligee or not. It is not necessary that there should be an eviction of the grantee, in order

to constitute a breach of the bond. The grantee may not be evicted until after the death of all the obligors.

By the demurrer, the defendant admits the existence of the outstanding right and shows a defect in the title, for which the plaintiff is entitled to recover on the bond.

SHAW C. J. delivered the opinion of the Court. The decision of this question depends upon the construction of the bond declared on. This replication does not state, that the plaintiff has been disturbed in his possession or title, or that any claim of right has been made by Woods and wife or any other person ; we are therefore to understand, that the plaintiff has been in the undisturbed occupation and enjoyment of the estate, from the time of the execution of the defendant's deed to the present time. The question then is, does the replication setting out a mere naked outstanding right of such long continuance, show a breach of the condition of the defendant's bond ?

We are to bear in mind, that this bond was not coeval with the deed from the defendant to the plaintiff's intestate ; it was not one of the original assurances of title given upon the con veyance, but a bond with surety made some years afterwards, and upon a recital that certain persons have, or pretend to have, some claims thereon. Another obvious remark is, that it does not recite any particular claim, but refers to all claims, and the condition is to secure the obligee against all claims. Further, all the stipulations in this condition look to the future, and if there had been, before the date of this deed, any breach of the defendant's covenants in his deed, it could not amount to a breach of the condition of this bond.

Now whether we regard the general object and purpose of this obligation, or its particular terms and stipulations, we are of opinion, that it constitutes a contract of indemnity, a guarantee against disturbance and interruption ; and that so long as there is no disturbance or interruption, either of the possession or title, by suit or claim, the mere existence of an outstanding unasserted right, does not amount to a breach of the condition of this bond.

The argument of the plaintiff is, that the obligation is to

quiet and extinguish all lawful claims and rights, and procure a release of such claims and rights, and therefore that the obligor was to be active, and procure such release, whether any adverse title was set up or not, or whether so required by the obligee or not. If those words stood alone, there would be some ground for this argument ; but they are followed by this further clause ; "so that he, the said Nutting &c., shall not be at any time hereafter molested or disturbed in the possession of said lands, or be sued, ejected, or turned out of the possession thereof." This clause qualifies the former, and the legal effect of the undertaking is, so to quiet, extinguish, and guard against all adverse rights and claims, as that the obligee shall not be sued, molested, or damnified. If therefore the obligor could obtain a practical relinquishment of such adverse claim, though by a covenant not to claim, which could not be pleaded as a technical release, or by an informal release, or otherwise, provided it was effectual and accomplished its object in securing to the obligee the undisturbed title and possession, he saved the condition of his bond, and had a right to avail himself of the lapse of time to work a complete confirmation of the legal title to the obligee. It was argued on the part of the plaintiff, that by the demurrer, the defendant admits the existence of the outstanding right, and shows a defect in the title of the intestate, for which the plaintiff ought to have a remedy on this bond.

This is not strictly a correct view of the effect of the demurrer ; the defendant in effect says, that though there is such an outstanding right, yet I am not called upon to go into a trial of that question with you in the present action. He could only demur, or traverse the right pleaded. Had he done the latter, the parties must have gone to trial upon the question of Woods's right ; the issue would have required the plaintiff to disprove and annul the title of his intestate, and the defendant, to establish it, and yet the judgment could have no effect upon the right of the party having the outstanding claim. And after all, if we are right in the construction of the instrument, such an issue would have been immaterial.

*Plea in bar good, and judgment thereon for the defendant.*